**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No.  07-353 (JDB) |
| GUILLERMO VELAZQUEZ-MARTINEZ, : | |
| : | |
| ROSENDO EMILIO SANCHEZ : | |
| (a.k.a. Rosendo Sanchez-Martinez), : | |
| : | |
| and : | |
| : | |
| SAMUEL GOMEZ MENDOZA : | |
| (a.k.a. Nicholas Martinez), : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S OMNIBUS RESPONSE**
**AND OPPOSITION TO DEFENDANTS' PRE-TRIAL MOTIONS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this omnibus response to the defendants' pre-trial motions in this case.[1] In support of its response and opposition, the United States represents the following:

**I.    Factual Background**

On November 27, 2007, a confidential informant working for the Narcotics and Special Investigation Division of the Metropolitan Police Department of the District of Columbia met with defendant Mendoza (who also referred to himself as "Maestro") as well as a man referred to as

---

[1] Specifically, the government opposes the motions of defendant Sanchez to suppress statements and tangible evidence, to suppress co-defendant statements that implicate him, and to sever.  The government also responds to defendant Sanchez' motion to compel so-called "404(b) notice."  Additionally, the government opposes the motions of defendant Velazquez-Martinez to suppress tangible evidence and to sever.  The government further acknowledges receipt of defendant Velazquez-Martinez' proposed order granting his counsel's oral motion to adopt the motions of his co-defendants.  To date, the government has not received notice of the filing of any pre-trial motion by defendant Mendoza.

"Primo." The confidential informant, defendant Mendoza, and Primo traveled to a nearby restaurant where the confidential informant expressed an interest in purchasing three to six kilograms of powder cocaine. After a price of $27,000 per kilogram was agreed upon, defendant Mendoza gave the informant a one-gram "tester" of cocaine. When the confidential informant later offered to increase the amount of his purchase to 11 kilograms, defendant Mendoza agreed, decreasing the price per kilogram to $26,500. Law enforcement officials conducting surveillance of the confidential informant's activities observed defendant Mendoza and Primo leave the restaurant meeting in a black Ford pickup truck (bearing North Carolina license plates) and return to a residence at 3114 Parker Avenue in Silver Spring, Maryland.

On November 28, 2007, defendant Mendoza telephoned the confidential informant, instructing him to return to the Wheaton, Maryland, restaurant where they had conducted their meeting the previous day. Shortly thereafter, law enforcement officials observed defendant Mendoza and Primo travel from 3114 Parker Avenue to the restaurant in the black Ford pickup truck. In the parking lot of the restaurant, defendant Mendoza and Primo entered the informant's vehicle and sold the informant 100 grams of powder cocaine for $2,500. The defendant Mendoza also gave the informant an additional 103 grams of powder cocaine as a gesture of good will in anticipation of their large, upcoming deal.

On November 29, 2007, Mendoza telephoned the confidential informant. Mendoza explained that he had traveled to North Carolina and returned with only 2.5 kilograms of powder cocaine, not the 11 kilograms of powder cocaine as originally planned. Defendant Mendoza instructed the informant to meet him, nevertheless, at six o'clock that evening at 2500 Ennalls Avenue in Wheaton, Maryland. Upon arrival at the appointed place, the confidential informant

observed defendant Mendoza make a Nextel direct connect call to defendant Velazquez-Martinez, directing Velazquez-Martinez to tell defendant Sanzhez to bring the cocaine around. Thereafter, defendant Mendoza, Mendoza's juvenile son, defendant Velazquez-Martinez, and defendant Sanchez were all present at the Ennalls Avenue location. After Mendoza entered the confidential informant's vehicle, they began to drive to Washington, D.C., followed by Velazquez-Martinez and Mendoza's son in a tan Ford Explorer bearing North Carolina tags and by Sanchez in a black Ford F-150 truck bearing North Carolina tags. The vehicles stopped upon arrival at 1221 Van Buren Street in the northwest quadrant of the District of Columbia. The confidential informant then introduced an undercover law enforcement officer who posed as a relative of the confidential informant. The undercover officer showed to the defendants a bucket containing $100,000. In response, the defendants advised that the two kilograms of powder cocaine were in a "trap" in one of the defendant vehicles and that defendants were short of the 2.5 kilograms promised by .5 grams. The defendants also advised that they were experiencing some difficulty opening the trap. After some debate about where the transaction should take place, the defendants each re-entered the defendants' vehicles and began to depart.

As they attempted to depart, law enforcement officials stopped the vehicles, detained the defendants, and searched the defendants' vehicles. The black Ford F-150, driven by defendant Sanchez, contained in the bed of the truck a toolbox with a false bottom. Upon removing the false bottom with a screwdriver, law enforcement official recovered two packages of powder cocaine (wrapped in plastic and brown tape), one package containing 1099 grams and the other 1118 grams of cocaine. From under the passenger seat of the tan Ford Explorer, driven by defendant Velazquez-Martinez, law enforcement officials recovered 526 grams of powder cocaine wrapped in plastic and

black tape.

Defendant Sanchez later provided a statement to law enforcement officials, explaining how he was instructed to retrieve the Ford F-150 that he understood to contain two packages of cocaine, drive it from North Carolina to the Washington, D.C. area, and promised that he would be paid $250 for each kilogram of cocaine he delivered.

## II.    Motion to Suppress Statement by Defendant Sanchez

While defendants Velazquez-Martinez and Mendoza each invoked their right not to provide a statement to law enforcement officials, defendant Sanchez, after advice of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) ("Miranda"), provided a statement to law enforcement disclosing, among other things, that (1) defendant Mendoza instructed him to retrieve the black Ford F-150 truck from the parking lot of a restaurant in Siler, North Carolina; (2) he was advised that the truck contained "two in the trap," a reference to two bags of cocaine in a hidden compartment in the truck; (3) he believed that the cocaine he transported belonged to another; (4) he was instructed where to deliver the truck and how to remove the bags of cocaine; and (5) he was to be paid $250 per kilogram of cocaine that he transported and delivered.

Defendant Sanchez now claims that the custodial statements that he provided to law enforcement "were obtained in violation of his Miranda rights." Sanchez Motion to Suppress Statement and Tangible Evidence at 2. Although defendant Sanchez relies heavily on cases that address the issue of what constitutes "custody," the government acknowledges that defendant Sanchez was in custody when he provided his statement to law enforcement and, thus, the majority of defendant Sanchez' argument is inapposite. In fact, as evidenced by his signature on the "Notificación de los Derechos" sheet, after provision of notice in Spanish, defendant Sanchez

4

waived his Miranda rights prior to making a statement to law enforcement. Because defendant Sanchez provides no support for his general claim that he "never intentionally relinquished a known right or privilege" (Motion to Suppress Statement and Tangible Evidence at 3), his motion to suppress the statement should be denied. See United States v. Thornton, 147 U.S. App. D.C. 114, 124 n.65, 454 F.2d 957, 967 n.65 (1971) (concluding that allegations that are merely conclusory cannot suffice, and that the defendant is obliged, in definitive motion papers, to make factual allegations which, if established, would warrant relief).

### III. Motions to Suppress Tangible Evidence

Defendant Velazquez-Martinez moves to suppress any evidence recovered "as a result of the search of an auto he was driving on or about November 29, 2007." Defendant Velazquez-Martinez' Motion to Suppress Tangible Evidence and Memorandum of Points and Authorities Thereof at 1. As support for his motion, defendant Velasquez-Martinez claims erroneously that officers lacked probable cause to search the vehicle that he drove and that they lacked reasonable articulable suspicion to search his person. See id. at 2. Similarly, claiming that he was merely proximate to allegedly illegal activity, defendant Sanchez argues that law enforcement was without even a reasonable articulable suspicion that would have permitted their seizure of tangible evidence.[2] The claims of both defendants are without merit, however, and their motions should be denied.

As an initial matter, defendant Sanchez' claim fails with respect to the Ford F-150 that he drove because Sanchez is without standing to challenge the search and seizure of a truck that he

---

[2] Defendant Sanchez does not specify the tangible evidence he seeks to suppress or even whether the evidence he seeks to suppress was recovered from his vehicle or from his person.

asserts was not his and whose illicit contents he claims he believed belonged to another. See Rakas v. Illinois, 439 U.S. 128 (1978).

Moreover, even if Sanchez had standing to challenge the search of the truck, its search -- as well as the search of the vehicle driven by Velazquez-Martinez -- was supported by probable cause. Whether probable cause exists depends on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). Probable cause may be supported by a police officer's observations, see, e.g., United States v. Cruz, 834 F.2d 47, 51 (2d Cir.1987), or by information provided to an officer by a reliable informant, see, e.g., United States v. Pena, 961 F.2d 333, 339-40 (2d Cir.1992). In the instant case, the agreements reached between defendant Mendoza and the confidential informant on November 27, 2007, and November 28, 2007 -- coupled with (1) defendant Mendoza's November 29, 2007, call to the confidential informant evidencing an intent to consummate their pending deal; (2) Mendoza's direction of defendant Velazquez-Martinez to instruct defendant Sanchez to bring around the F-150 containing the powder contain; (3) the trek of all defendants into the District of Columbia with the confidential informant, apparently for purposes of consummating the deal; and (4) the defendants' representations that at least two kilograms of cocaine were located in a hidden compartment of the vehicle that defendant Sanchez drove -- supplied law enforcement officials with probable cause to believe that each of the defendants was either in actual or construction possession of cocaine with an intent to distribute the cocaine. Further, such probable cause did not arise only with respect to the vehicle driven by defendant Sanchez, but with respect to all defendant-related vehicles, particularly in light of the fact that F-150 was alleged by defendants only to have contained two out of the 2.5 kilograms contemplated under the agreement.

6

The legitimate recovery of a total of 2,743 grams of powder cocaine from the two defendant vehicles gave rise to the valid arrest of each defendant. After making a valid arrest, police may conduct a warrantless search of a suspect's person and of the area within the suspect's immediate control. United States v. Robinson, 414 U.S. 218, 235 (1973); Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Salazar, 805 F.2d 1394, 1399 (9th Cir.1986) (concluding that a search before formal arrest is nevertheless incident to arrest because probable cause existed before the search). Here, subsequent to the lawful arrest of each d defendant, any tangible evidence seized from their persons, or from an area within their immediate control, was lawfully seized during a search incident to a valid arrest. Accordingly, the motion of each defendant to suppress tangible evidence should be denied.

### IV.     Motions to Sever Defendants Sanchez and Velazquez-Martinez

Defendants Sanchez and Velazquez-Martinez each move to sever their case from that of their co-defendants for trial. Defendant Sanchez alleges that he did not participate in the negotiation of the sale of narcotics and argues that, because he is "cast among two defendants and accused of possessing with intent to distribute powder cocaine[,]" Sanchez Motion to Sever at 2-3, he will be determined guilty merely by association, see id. at 3. Defendant Velazquez-Martinez argues that because the evidence against him allegedly is "dramatically" less than that against his co-defendants, Velazquez-Martinez Motion to Sever at 2, and because he and his co-defendants may assert inconsistent defenses, id. at 3, severance is required. As set forth below, however, these claims are without merit, and the Court should not sever the defendants from a joint trial.

Any analysis of defendants' severance motions begins with Rule 8(b) of the Federal Rules of Criminal Procedure, which controls joinder of both the offense and the defendants.  See United States v. Wilson, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994).

The District of Columbia Circuit construes Rule 8 broadly in favor of joinder.  United States v. Richardson, 167 F.3d 621, 624 (D.C. Cir.1999) (stating, "'[t]he joinder presumption is especially strong where . . . the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, inter alia, with participating in the same illegal acts.'") (quoting United States v. Ford, 870 F.2d 729, 731 (D.C. Cir. 1989)); United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir. 1990) (noting that "this court . . . has repeatedly declared that joint trials may be preferred, given the heavy and increasing criminal caseload  in our trial courts"); United States v. Jackson, 562 F.2d 789, 796-97 (D.C. Cir. 1977); United States v. Hines, 455 F.2d 1317, 1334 (D.C. Cir. 1971).  In short, "a substantial public interest supports joint trial."  United States v. Friedman, 445 F.2d 1076, 1082 (9th  Cir. 1971).[3]

Although the instant defendants are not formally charged with conspiracy, the principles underlying joinder rules in the conspiracy context apply equally here because the defendants acted in concert.  In such cases especially, severance should be the rare exception rather than the rule.

---

[3]As the Court of Appeals for this Circuit has stated:

> [Joinder] expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.

United States v. Robinson, 432 F.2d 1348, 1351 (D.C. Cir. 1976).  See also United States v. Bruner, 657 F.2d 1278, 1289-90 (D.C. Cir. 1981); United States v. Mack, 466 F.2d 333, 337 (D.C. Cir. 1972).

"Rarely, if ever, will it be improper for co-conspirators to be tried together." United States v. Jackson, 64 F.3d 1213, 1217 (8th Cir. 1995). Further, severance is not appropriate simply because all the conspirators did not participate in all phases of the conspiracy, or because one defendant's role in the conspiracy was smaller or less important than another's. Blumenthal v. United States, 332 U.S. 539, 556-57 (1947); United States v. Leach, 613 F.2d at 1299; United States v. Nersesian, 824 F.2d 1294, 1304 (2d Cir. 1987); United States v. Perholtz, 657 F.Supp. 603 (D.D.C. 1986) (finding that defendants need not be equally involved before they may be tried together); United States v. Ianniello, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985) (the fact that a defendant plays a minor role in a RICO conspiracy does not entitle him to severance), aff'd, 808 F.2d 84 (2d Cir. 1986); see also United States v. Diallo, 29 F.3d 23, 27-28 (1st Cir. 1994) (holding severance is not appropriate where multiple trials would require "repetitive use of most of the same evidence and facts.").

    Nevertheless, where defendants are properly joined, a district court can grant severance under Rule 14 of the Federal Rules of Criminal Procedure, but "only if there is a serious risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). A defendant seeking severance must demonstrate a specific and compelling prejudice that would result in an unfair trial, a prejudice of a type against which the trial court is unable to afford protection. United States v. Causey, 185 F.3d 407, 416 (5th Cir. 1999); see United States v. Lopez, 898 F.2d 1505, 1510 (11th Cir. 1990); United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986) (providing that the movant must show more than merely that a separate trial would offer him a better chance of acquittal). The movant has the "difficult burden of showing that the prejudice to him from

9

joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984). Further, the United States Supreme Court has cautioned that "Rule 14 does not require severance even if prejudice is shown; rather[,] it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-39. Hence the test for determining "compelling prejudice" is the jury's ability to follow the trial court's instructions and separate evidence relating to each defendant. United States v. Cross, 928 F. 2d 1030, 1039 (11th Cir. 1989); see also United States v. Leavitt, 878 F.2d 1329, 1339 (11th Cir. 1989). In other words, where adequate instructions are available, a defendant cannot make out compelling prejudice. United States v. West, 877 F.2d 281, 287 (4th Cir. 1989). Generally, therefore, limiting instructions will cure any potential prejudice to a defendant by having a joint trial. Zafiro, 506 U.S. at 539. Finally, as always, the Court must balance the risk of prejudice to the defendant against the strong interests of judicial economy. United States v. Butler, 822 F.2d 1191, 1194 (D.C. Cir. 1987).

In light of the firmly established principles governing joint trials that militate against severance, the Court should not sever the joint trials of defendants Sanchez, Velazquez-Martinez, and Mendoza because none of the defendants has established the specific and compelling prejudice required for severance. The defendants' conclusory and speculative assertions regarding the possibility of antagonistic defenses and the potential for jury confusion simply do not tip the balance in favor of severing any portion of this case. Therefore, the motions to sever of defendants Sanchez and Velazquez-Martinez should be denied.

V.     **Notice of 404(b) Evidence**

Defendant Sanchez requests that this Court issue an order directing the government to

disclose, prior to trial, its intention to admit evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.  In response, the government submits that it intends to introduce evidence, as detailed in the "Factual Background" section of this memorandum, of the meetings between the confidential informant and defendant Mendoza and Primo on November 27, 2007, and November 28, 2007, as well as the November 29, 2007, prelude meeting between the confidential informant and defendant Mendoza that allowed law enforcement to observe defendant Mendoza directing defendants Velazquez-Martinez and Sanchez regarding retrieval of the cocaine in preparation for their trek into Washington, D.C.  The government also expects to introduce evidence related to how defendant Sanchez came into possession of the Ford F-150 truck, how he obtained knowledge of the concealed compartment and its contents, and how he received orders regarding when, where, and how he was to transport the truck and its contents.

The government intends to introduce evidence of these earlier encounters because they are crucial to an understanding of the events of the evening of November 29, 2007, because they are closely intertwined with the conduct of each defendant on November 29, 2007, and because they serve as direct proof of the conduct charged with respect to each defendant.

### VI.     Motions to Compel Government to Produce Co-Defendant Statements that Implicate other Defendants

Defendant Sanchez moves to compel the government to produce the statement of any co-defendant that implicates him in the November 29, 2007, possession with intent to distribute more than 500 grams of cocaine.  Defendant Sanchez is now joined in motion, through oral motion, by defendant Velazquez-Martinez.  In response, the government submits that it believes it already has disclosed the information that the defendants seek, but is aware of its continuing obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  To the extent that the government

discovers any additional such evidence, it will disclose such evidence in a timely fashion such that compliance with the doctrines embodied in <u>Bruton v. United States</u>, 391 U.S. 123 (1968), and <u>Gray v. Maryland</u>, 118 S. Ct. 1151 (1998), and may be achieved.

    WHEREFORE, based on the foregoing as well as any other such points and authorities as may be cited at any hearing upon defendants' motions, the United States respectfully requests that each of the Defendants' pre-trial motions be denied.

                              Respectfully submitted,

                              JEFFREY A. TAYLOR
                              UNITED STATES ATTORNEY

                              _____/s/_____
                              Renata Kendrick Cooper
                              Assistant United States Attorney
                              D.C. Bar # 424248
                              555 Fourth Street, N.W.
                              Room 4241
                              Washington, D.C.  20530
                              (202) 307-0031
                              renata.cooper@usdoj.gov